IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ISRAEL ESCOBAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-1962-D |
| VS. | § | |
| | § | |
| LANCE MONTEE, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Israel Escobar ("Escobar") brings this action under 42 U.S.C. § 1983 against

defendant Grand Prairie Police Department ("GPPD") Canine Officer Lance Montee

("Officer Montee"), alleging that Officer Montee violated Escobar's Fourth Amendment

rights when he dispatched his police dog without notice while Escobar was on the ground in

a position of surrender, causing Escobar to suffer extensive injuries.  Officer Montee moves

to dismiss under Fed. R. Civ. P. 12(b)(6), contending that Escobar has failed to state a claim

on which relief can be granted, or because Officer Montee is entitled to qualified immunity.

Alternatively, Officer Montee moves the court to require that Escobar file a Rule 7(a) reply.

For the following reasons, the court grants in part and denies in part Officer Montee's motion

to dismiss based on qualified immunity, denies his motion to dismiss for failure to state a

claim, and denies his alternative request to require a Rule 7(a) reply.

I

According to the well-pleaded factual allegations of Escobar's complaint, which the court accepts as true in deciding this motion,[1] shortly after 9:00 p.m. on February 22, 2014 Escobar had an argument and physical altercation[2] with his wife in a restaurant parking lot. Following the altercation, Escobar drove his wife to a Walmart parking lot, where she exited the vehicle, and he then returned to his residence located in Grand Prairie, Texas.  After being at his residence for a few minutes, Escobar decided to return to the Walmart location to pick up his wife.  As he was about to leave, he noticed a police vehicle at his residence.

"Fearing the consequences of a run-in with police," Compl. ¶ 13, Escobar decided to exit his residence through the back door.  He took refuge near the back porch of a house a few blocks away.  While Escobar was hiding, "Air One," the helicopter dispatched from the Texas Department of Public Safety, Garland Office, arrived at the scene, and gave word to the officers on the ground that someone was in the back yard two houses to the west of the officers' location.  According to the Incident History Detail transcribed from statements over

---

[1]In deciding Montee's Rule 12(b)(6) motion, the court construes the amended complaint in the light most favorable to Escobar, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

[2]Escobar alleges that his wife told police that he struck her with his hand, which he contends is a Class "A" Misdemeanor Assault under the Texas Penal Code.

the police radio, it was determined that Escobar was lying on the ground "in [a] fetal position."  *Id.* ¶ 34 (capitalization omitted).

After Escobar's location was determined, Officer Montee and the other officers at the scene formulated a plan.  According to the GPPD Narrative ("GPPD Narrative") attached to Escobar's complaint, Officer C. Dombroski ("Officer Dombroski") advised the other officers that Escobar's mother had informed him that Escobar had told her that the police would have to kill him to catch him.  The officers were also informed that Escobar was armed with a knife.

Several attempts were made to contact the owner of the residence where it was believed Escobar was hiding, but when no one responded, Officer Montee threw his canine, a German Shepherd named "Bullet," over the fence.  According to the GPPD Narrative, "[d]ue to the fact that Escobar was armed with a knife and that he had told his mother that the police would have to kill him to take him into custody, [Officer Montee] decided not to give out [his] canine warnings as [he] normally do[es]."  Compl. Ex. B.

Escobar alleges that, as soon as he heard Officer Montee and his dog rounding the corner of the house, he dropped the pocket knife that was in his possession and lay flat on the ground "like a parachute man."[3]  Compl. ¶ 16.  Without giving Escobar any warning,

_____

[3]The GPPD Narrative states:

> [a]s Canine "Bullet" rounded the southwest corner of the house, Air One activated his spot light which illuminated Canine "Bullet" and Escobar who was lying on the ground.  Canine "Bullet" apprehended Escobar by biting his left leg on his calf.

Officer Montee released Bullet.  Bullet charged at Escobar and bit into his middle upper calf area while shaking his head violently.  After approximately 30 seconds, Bullet let go of the middle upper calf area of Escobar's leg and took a second bite of Escobar's outside upper calf area.  Escobar alleges that during the entire incident, he continuously yelled for the dog to be taken off of him.  After approximately 30 more seconds, one of the officers yelled a command at Bullet, causing him to immediately stop biting.

Escobar was taken by ambulance to the hospital, where medical staff observed and determined "that [Escobar] had suffered 'several large, deep wounds to large 4 inch square chunk gone and smaller beneath it'"; that Escobar was unable to move the toes on his left foot; and that the wounds were "so large that his bones, facia, and muscles were visible." Compl. ¶ 53.  After Escobar's wounds were cleaned, dressed, and closed, Escobar was transported to jail.  Escobar alleges that, as a result of the denial of proper medical treatment while in custody, his calf wounds ultimately became infected, requiring that he undergo four surgeries, one of which included skin grafts and collagen injections.

Escobar brings this suit under 42 U.S.C. § 1983 against Officer Montee and "John

---

I could see that Escobar had a knife in his right hand and he was ordered to drop the knife as Canine "Bullet" remained on his left leg.  Escobar threw the knife from his hand and he was placed in handcuffs. . . .  Canine "Bullet" was removed from Escobar's left leg and I could see that Escobar had a lot of blood coming from his leg.

Compl. Ex. B.

Does 1-10."[4]  He alleges that Officer Montee violated his constitutional right to be free from unreasonable seizure; to be free from the use of unreasonable, unnecessary, and excessive force; and to have medical care for injuries received while in custody.  Escobar seeks damages, including exemplary damages, and attorney's fees under 42 U.S.C. § 1988.

Officer Montee moves to dismiss Escobar's claims against him under Rule 12(b)(6),[5] contending that the complaint fails to state a claim to relief that is plausible on its face and that he is entitled to qualified immunity.[6]  Alternatively, he moves to require Escobar to file a Rule 7(a) reply under the procedures established by the Fifth Circuit in *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995).  Escobar opposes the motion.

## II

The court turns first to Officer Montee's motion to dismiss based on the doctrine of qualified immunity and his alternative motion to require Escobar to file a Rule 7(a) reply.[7]

---

[4]Escobar sues John Does 1-10 on claims of indifference and failure to intervene to stop dog attack, denial of medical treatment, and intrusion on seclusion.

[5]Officer Montee filed an amended motion to dismiss on the same day he filed his motion to dismiss, and the court statistically closed the motion to dismiss.  The court is deciding today Officer Montee's amended motion to dismiss.

[6]Officer Montee does not move to dismiss or seek a Rule 7(a) reply regarding Escobar's § 1983 claim based on Officer Montee's alleged violation of his constitutional right to have medical care for injuries received while in custody.

[7]This is because, first, "[q]ualified immunity . . . should be addressed by a district court in the early stages of litigation."  *Murray v. Earle*, 2008 WL 1744257, at *4 (5th Cir. Apr. 11, 2008) (per curiam) (unpublished opinion) (citing *Siegert v. Gilley*, 500 U.S. 226, 231 (1991)).  "One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."  *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citing *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir.

-5-

A

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council—President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To decide whether a defendant is entitled to qualified immunity, the court begins with the threshold question whether, taken in the light most favorable to plaintiff as the party asserting the injury, the facts he has alleged show that the defendant's conduct violated a constitutional right. *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the

_____

1986)). In this circuit, it is established that "[d]iscovery . . . must not proceed until the district court first finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995). Second, if Officer Montee is entitled to qualified immunity, the court can (and must) dismiss Escobar's claims against him without reaching the other grounds of Officer Montee's motion. Third, if Officer Montee is entitled to qualified immunity as to some but not all claims, the court can narrow its analysis of his motion to dismiss to the claims for which he is not entitled to qualified immunity.

light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?   This must be the initial inquiry.")).[8]   "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."[9]  *Id*.   "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable."  *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).   "The objective reasonableness of allegedly

---

[8]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation.  *Id*. at 236.  The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases."  *Id*. at 242.

[9]The Fifth Circuit recently explained:

> A right is clearly established only if the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.  A case directly on point is not required; rather, the central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.

*Cole v. Carson*, 802 F.3d 752, 761 (5th Cir. 2015) (quoting *Trent v. Wade*, 776 F.3d 368, 383 (5th Cir. 2015)) (internal quotation marks and brackets omitted).

illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo*, 279 F.3d at 284 (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)).

"[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Schultea*, 47 F.3d at 1433).  Although a plaintiff may comply with ordinary pleading standards in his initial complaint, and need not anticipate a qualified immunity defense, "[w]hen a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail" pursuant to Rule 7(a). *Schultea*, 47 F.3d at 1433.  "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Id.* "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff['s] injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).  The case should not be allowed to proceed unless plaintiff can assert specific facts that, if true, would overcome the defense. *See Morin*, 77 F.3d at 120 ("Public officials are entitled to qualified immunity from suit under § 1983 unless it is shown by specific allegations that the officials violated clearly established law."); *Schultea*, 47 F.3d at 1434

("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity[.]").  The "district court's discretion not to [require a Rule 7(a) reply] is narrow indeed when greater detail might assist." *Schultea*, 47 F.3d at 1434; *see also Reyes*, 168 F.3d at 161 ("Faced with sparse details of claimed wrongdoing by officials, trial courts ought routinely require plaintiffs to file a reply under [Rule] 7(a) to qualified immunity defenses.").

B

Officer Montee argues that the allegations of Escobar's complaint fail to show that he used excessive force, in violation of the Fourth Amendment, by using his police dog to apprehend Escobar by biting and holding him.  Officer Montee contends that Escobar had brutally beaten his wife, was armed with a knife, told his mother he would have to be killed rather than arrested, and officers chased Escobar to a residential neighborhood where he climbed across fences, climbed on roofs, and otherwise clearly created the impression that he would desperately try to escape capture and might pose a danger to the officer or other innocent inhabitants of the residential neighborhood.  Officer Montee argues that the law is not clearly established that, under these circumstances,  deploying a police dog as he allegedly did violated Escobar's constitutional rights.  Officer Montee also maintains that, although Escobar alleges that he intended to surrender, Escobar has pleaded no facts that show that Officer Montee knew of this intent, and that, even if Escobar had just dropped his knife, the use of a dog to apprehend him by biting and holding him would have been reasonable under Fourth Amendment standards.  Regarding Officer Montee's failure to warn

Escobar before deploying Bullet, Officer Montee contends that the law is not clearly established that such a warning is required.

Escobar responds that he has alleged that, before throwing Bullet over the fence, Officer Montee knew that Escobar was lying in a fetal position, and that he was in fact lying flat on the ground "like a parachute man." He disputes Officer Montee's use of the phrase "brutal felony assault," arguing that the underlying offense did not involve serious bodily injury or the employment of a deadly weapon. He then recites the "host of violations" he believes Officer Montee committed, including:

> (1) providing no warning of use; (2) employing the dog when Plaintiff had surrendered; (3) employing the dog while knowing Plaintiff was in a fetal position on the ground; (4) employing the dog while, as [t]he Plaintiff contends, he was [lying] on the ground with his arms stretched out like a "parachute"; (5) siccing a police dog on a man lying on the ground who was not resisting arrest; (6) siccing a police dog on a man[] [lying] on the ground who was not fleeing from an arrest; (7) by having a police dog bite and hold Plaintiff who was not resisting; (8) by having a police dog bite and hold Plaintiff who was unarmed; (9) having a police dog bite and hold Plaintiff for 30 seconds; and (10) having a police dog bite and hold Plaintiff a *second time* for approximately 30 seconds when the officer has established that Plaintiff was unarmed, and not resisting.

P. Br. 11. Escobar contends that there is no suggestion that he was resisting arrest; he argues that, by allowing Bullet to bite and hold him twice, even though it was evident that he was unarmed and surrendering, Officer Montee acted unreasonably; and he posits that several different cases hold that different components of Officer Montee's conduct do not "withstand scrutiny," *id*. at 12, because it is unconstitutionally unreasonable to release a police dog

without a warning, it is constitutionally unreasonable to "sic" a dog on a surrendering individual by throwing the dog over a fence, and it is constitutionally unreasonable to "sic" a dog on an individual repeatedly while the individual is in custody.

C

Escobar alleges that Officer Montee used excessive force, in violation of his Fourth Amendment right against unreasonable seizure. "The Fourth Amendment's protection against unreasonable seizures of the person has been applied in causes of action under 42 U.S.C. § 1983 to impose liability on police officers who use excessive force against citizens." *Colston v. Barnhart*, 130 F.3d 96, 102 (5th Cir. 1997). "'To prevail on an excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)) (some internal quotation marks omitted).

There is no dispute that Escobar suffered an injury. "The relevant question in this case is whether the force was 'clearly excessive' or 'clearly unreasonable.'" *Id*. In assessing the reasonableness of the use of force, the court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quoting *Graham*, 490 U.S. at 396) (internal quotation marks omitted).  This is an objective standard: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

D

Accepting the well-plead allegations of the complaint as true, and viewing them in the light most favorable to Escobar, as the court must, the court concludes that Escobar has failed to assert sufficient facts to show that Officer Montee used excessive and unreasonable force, in violation of the Fourth Amendment, when he initially released Bullet over the fence to bite and hold Escobar.

Considering the *Graham* factors, the court concludes that, under the alleged facts and circumstances of this particular case, Officer Montee's decision to release Bullet over the fence to bite and hold Escobar was objectively reasonable.  In his complaint, Escobar admits that he had assaulted his wife by striking her with his hand; that when the police arrived at his residence, he fled through the back door and hid near the back porch of a neighboring house; that he hid for approximately 20 minutes before being apprehended by Bullet and Officer Montee; that while he was hiding, he heard the sound of helicopters and police radio;

that Officer Montee was informed that Escobar's mother had told Officer Dombroski that

police would have to kill Escobar in order to catch him; that Officer Montee was informed

that Escobar had a knife; and that although Air One informed the officers on the ground that

Escobar was lying in a fetal position, Officer Montee did not actually see Escobar before he

put Bullet over the fence.   These allegations show that Officer Montee was aware that

Escobar had committed a crime of violence, had fled from his house in order to evade arrest,

was hiding from the police, was armed, and had stated an intention to resist being

apprehended.   Courts have held under similar circumstances that the release of a police dog

to apprehend a fleeing or hiding suspect is not objectively unreasonable.   *See, e.g., Thomson

v. Salt Lake Cnty.*, 584 F.3d 1304, 1317 (10th Cir. 2009) (holding that release of police dog

did not constitute unconstitutional excessive force where suspect threatened his wife and fled

their home, and officers knew he was armed and hiding in a residential neighborhood in the

middle of the night); *Tilson v. City of Elkhart, Ind.*, 96 Fed. Appx. 413, 416-17 (7th Cir.

2004) (unpublished) (holding that release of police dog to bite and hold fleeing suspect did

not constitute excessive force, and noting "[officer]'s use of a K-9 to bite and hold [suspect]

until [officer] could apprehend him is not an unconstitutional (or unreasonable) seizure *per

se*."); *Jarrett v. Town of Yarmouth*, 331 F.3d 140, 149 (1st Cir. 2003) (holding that release

of police dog to bite and hold suspect was not unreasonable where suspect had attempted to

evade arrest by flight, and officer could reasonably conclude he posed threat to safety of

residents in neighborhood because officer "could not discern whether [suspect] was armed

given the limited visibility, or predict the lengths to which [suspect] would go to avoid

-13-

arrest."); *Alicea v. Thomas*, 2015 WL 143987, at *1, 7 (N.D. Ind. Jan. 12, 2015) (holding that releasing canine over five-foot-high pool wall to bite and hold hiding suspect who had burglarized home and fled on foot was not objectively unreasonable), *appeal docketed*, No. 15-1255 (7th Cir. Feb. 10, 2015); *Baker v. Cohen*, 2010 WL 3385266, at *12 (S.D. Fla. Aug. 5, 2010) (holding that release of police dog to bite, seize, hold, and remove suspect from vehicle where he was found hiding after fleeing from police did not violate suspect's Fourth Amendment rights where suspect had fled scene of initial traffic stop, engaged in highspeed chase ending in crash, and continued flight on foot, and police officer could not see suspect's hands and did not know whether he was armed). Escobar alleges that as soon as he heard the police dog, he "dropped a pocket knife that was in his possession onto the ground, and lay flat on the ground 'like a parachute man.'" Compl. ¶ 16. He also asserts that "[d]espite that Plaintiff was already lying down and surrendering, Defendant still sics the canine into him," *id.* ¶ 51, and argues in his brief that, at the point at which Bullet was released, Escobar "was already surrendering and [lying] flat on the ground," P. Br. 17 (emphasis omitted). Escobar has not alleged any facts, however, that would suggest that Officer Montee knew, before releasing Bullet, that Escobar was "surrendering."[10] He contends only that Officer Montee

---

[10]The precise chronology of events is somewhat unclear. At one point in his complaint, Escobar alleges, that when the "police officer" (presumably Officer Montee) saw him, he yelled at Escobar to "get down on the ground." Compl. ¶ 17. He alleges two paragraphs later that "[s]uddenly and without notice from any officer, the police dog charges at Plaintiff, who remained on the ground, and bit him." *Id.* ¶ 19. Elsewhere in his complaint, however, he alleges that Officer Montee put Bullet over the fence *before* he saw Escobar, alleging, "[w]ithout seeing what Escobar is doing, and without giving any verbal warning, Defendant then literally throws his dog over the fence, and has him attack Plaintiff." *Id.* ¶

was informed that Escobar was lying in a fetal position.  Compl. ¶¶ 34-35.  But the mere fact that Escobar was lying on the ground is an insufficient allegation of "surrender."  This is especially the case given the circumstances—i.e., that Escobar had fled from the police and had stated that officers would have to kill him rather than catch him.  And although Escobar contends that he dropped his weapon and was lying flat "like a parachute man," he does not contend that Officer Montee knew either of these facts before he decided to release Bullet.  In other words, although Officer Montee knew that Escobar was lying on the ground, Escobar does not allege that Officer Montee would have had any reason to know, prior to releasing Bullet, that Escobar was "was already surrendering," P. Br. 17, as he contends.  *See Nelson v. Cnty. of Wright*, 162 F.3d 936, 990 (8th Cir. 1998) ("The issue of reasonableness must be examined from the perspective of the facts known to the officer at the time of the incident."); *Rockwell*, 664 F.3d at 991 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." (quoting *Graham*, 490 U.S. at 396)).  Accordingly, the court concludes that Escobar has failed to plead facts that show that Officer Montee acted unreasonably—and thus violated Escobar's constitutional rights—when he put Bullet over the fence to apprehend Escobar.  To the extent Escobar bases his § 1983 claim on these

---

49.  Because the latter allegation clearly states that Officer Montee threw Bullet over the fence *before* seeing Escobar, because the earlier allegations are not specific regarding the sequence of events, and because Escobar does not explicitly allege or argue, in his complaint or in his brief, that Officer Montee saw Escobar *before* releasing Bullet, the court will treat the complaint as alleging that Officer Montee threw Bullet over the fence *before* first seeing Escobar.

allegations, the court grants Officer Montee's motion to dismiss based on qualified immunity.

E

The court turns next to Escobar's contention that the failure to provide a warning before releasing a police dog is unconstitutional as a matter of law, and that Officer Montee's undisputed failure to give out a warning precludes the court from ruling in his favor on the question of qualified immunity.  Assuming *arguendo* that Officer Montee's failure to warn Escobar before releasing Bullet rendered his use of force unreasonable, the court nonetheless concludes that Officer Montee is entitled to qualified immunity to the extent Escobar bases his § 1983 claim on Officer Montee's failure to warn.  This is so because it was not clearly established at the time of the incident that using non-deadly canine force under these circumstances to apprehend a fleeing armed suspect without a verbal warning violated the Fourth Amendment.

1

Under the second prong of the qualified immunity analysis,[11] courts consider "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident."  *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008); *see also Wood v. Moss*, ___U.S.___, 134 S.Ct. 2056, 2067 (2014) ("The dispositive inquiry, we have said, is whether it would have been clear to a reasonable officer in the [defendant's] position that [his] conduct was unlawful in the situation [he] confronted." (quoting *Saucier*, 533 U.S. at

---

[11]Under *Pearson*, 555 U.S. at 236, the court may consider the second *Saucier* prong first.

-16-

202) (internal quotation marks and brackets omitted)); *Castillo v. City of Weslaco*, 369 F.3d

504, 506 (5th Cir. 2004) (per curiam) ("The court must first identify the relevant clearly

established law [and t]hen . . . determine whether the defendant's actions were objectively

reasonable." (citing *Petta v. Rivera*, 133 F.3d 330, 334 (5th Cir. 1998))).  To make this

determination, the court must

> ask whether the law so clearly and unambiguously prohibited
> [the defendant's] conduct that every reasonable official would
> understand that what he is doing violates the law.  To answer
> that question in the affirmative, [the court] must be able to point
> to controlling authority—or a robust consensus of persuasive
> authority—that defines the contours of the right in question with
> a high degree of particularity.

*Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (brackets and internal

quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2084

(2011)).  While "a case directly on point" is not required for the court to conclude that the

law is clearly established, "existing precedent must have placed the statutory or constitutional

question beyond debate."  *al-Kidd*, 131 S.Ct. at 2083.  Moreover, a court may not "'define

clearly established law at a high level of generality,' since doing so avoids the crucial

question whether the official acted reasonably in the particular circumstances that he or she

faced."  *Plumhoff v. Richard*, ___ U.S. ___, 134 S.Ct. 2012, 2023 (2014) (quoting *al-Kidd*,

131 S.Ct. at 2084).  The Fifth Circuit has explained that "[t]he central concept is that of 'fair

warning': The law can be clearly established 'despite notable factual distinctions between

the precedents relied on and the cases then before the Court, so long as the prior decisions

gave reasonable warning that the conduct then at issue violated constitutional rights.'"

*Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

2

Escobar has failed to point to any controlling authority that would establish that Officer Montee's failure to give a verbal warning before putting Bullet over the fence constituted a clear violation of Escobar's constitutional rights under the circumstances. Nor is there a "robust consensus of persuasive authority," *Morgan*, 659 F.3d at 372, that a warning is required in all circumstances.

At least two circuits—the Eighth and the Fourth—have expressly held that an officer's failure to warn before deploying a police dog violates the Fourth Amendment. *See Kuha v. City of Minnetonka*, 365 F.3d 590, 598 (8th Cir. 2004) (concluding that "a jury could properly find it objectively unreasonable to use a police dog trained in the bite and hold method without first giving the suspect a warning and opportunity for peaceful surrender."), *overruled on other grounds, Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385 (8th Cir. 2007) (en banc); *Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 175 (4th Cir. 1998) ("We hold that it was clearly established in 1995 that it is objectively unreasonable for a police officer to fail to give a verbal warning before releasing a police dog to seize someone."). But circuit and district courts in other circuits have held that, where there is a risk that a suspect might escape or where officer safety is at issue, an officer's failure to give a verbal warning before releasing a police dog does not render his use of force objectively unreasonable. *See Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1321 (10th Cir. 2009) ("A warning is not

invariably required even before the use of deadly force, let alone here, where the release of the dog was nondeadly force used in the face of an imminent threat."); *Johnson v. Scott*, 576 F.3d 658, 661 (7th Cir. 2009) (acknowledging that, although there was no oral warning before the police dog was released, suspect did not and could not credibly argue that warning would have made a difference, and, in any event, there was no real opportunity to warn because the fleeing suspect made a last-minute surrender immediately before the pursuing police dog bit him); *Grimes v. Yoos*, 298 Fed. Appx. 916, 923-24 (11th Cir. 2008) (holding that officer's failure to warn did not render use of police dog objectively unreasonable because department's manual made warning discretionary where warning would "allow the offender to escape," and officer was concerned about potential flight of suspect). Moreover, numerous district courts have held, in circumstances like those alleged here, that it is not clearly established that an officer must give a verbal warning before unleashing a police dog to bite and hold a concealed[12] suspect. *See, e.g., McCay v. City of Hayward*, 949 F.Supp.2d 971, 984 (N.D. Cal. 2013) (reviewing cases and concluding that law was not clearly established that officers were required to give warning before putting dog over fence in order to apprehend fleeing armed suspect); *Fallis v. Sasaki*, 2011 WL 111724, at *12 (W.D. Wash. Jan. 13, 2011) (granting summary judgment based on qualified immunity "on the narrow

---

[12]Escobar argues that, contrary to what Officer Montee argues in his brief, he was not hiding under any awning at any point in time.  But Escobar does not dispute that he was hiding in a back yard and that he was visible only from above (by Air One).  He does not allege that he was lying in plain view or that Officer Montee was able to see him before he put Bullet over the fence.

issue of failure to warn" because, at the time of plaintiff's arrest, "no right to warn of [dog]'s use had been clearly established."); *Pace v. City of Palmetto*, 489 F.Supp.2d 1325, 1335 (M.D. Fla. 2007) ("even assuming [officer's] use of [dog] and failure to give a verbal warning rendered his use of force objectively unreasonable, it was not 'clearly established' at the time of the incident that using non-deadly K-9 force under the circumstances to apprehend a fleeing felon without a verbal warning was in violation of the Fourth Amendment.").

Escobar relies on three decisions from this district, *Calton v. City of Garland*, 2004 WL 2965005 (N.D. Tex. Dec. 10, 2004) (Godbey, J.), *Malone v. City of Fort Worth*, 2014 WL 5781001 (N.D. Tex. Nov. 6, 2014) (Means, J.), and *Allen v. Burnett*, 2014 WL 840912 (N.D. Tex. Jan. 28, 2014) (Ramirez, J.), *rec. adopted*, 2014 WL 840912 (N.D. Tex. Mar. 4, 2014) (O'Connor, J.), to argue that the law is clearly established that a warning is required before releasing a police dog on a suspect. But in each of these cases, the officers released their dogs after the fleeing suspect had clearly indicated to the officers that he was surrendering.[13] By contrast, in this case, at the time Officer Montee decided to release Bullet

---

[13]In *Malone* the court denied the officer's motion for summary judgment on the issue of qualified immunity where, viewing the evidence favorably to the plaintiff, the officer allowed his dog to attack the plaintiff, without warning, after he had stopped his vehicle, held his hands up where the officer could see them, and made no attempt to flee. *Malone*, 2014 WL 5781001, at *11. In *Calton* the court denied the officer's motion for summary judgment based on qualified immunity, holding that no reasonable officer could conclude that the release of police dog without prior warning was constitutionally permissible where, after the suspect crashed his vehicle into a lake, the suspect exited the car and was complying with the officers' oral commands from the shore when he was viciously attacked by a police dog "with neither warning of nor cause for the attack." *Calton*, 2004 WL 2965005, at *1, 4. In

without first giving a verbal warning, Officer Montee had not yet observed Escobar, did not know whether he was armed, and had no way of knowing whether he would surrender, would flee, or would resist arrest, as Escobar's mother suggested was his intent.  Accordingly, unlike the decisions of other judges of this district on which Escobar relies, none of which is controlling authority for purposes of determining qualified immunity, in this case the court cannot conclude that, under the circumstances alleged, it was clearly established that Officer Montee's failure to give a warning was unconstitutional. Accordingly, under the second step of the qualified immunity analysis, the court holds that Officer Montee is entitled to qualified immunity to the extent Escobar bases his § 1983 claim on the failure to give a verbal warning before releasing Bullet.

F

To the extent Escobar bases his § 1983 claim on allegations that Officer Montee delayed in removing Bullet even after it was clear that Escobar had surrendered his weapon and was not resisting arrest, the court concludes Officer Montee is not entitled to dismissal at the Rule 12(b)(6) stage based on qualified immunity.

---

*Allen* the court held that there were factual disputes "as to the force used by Defendants after Plaintiff was discovered in the woods and whether Plaintiff was actively resisting," *Allen*, 2014 WL 840912, at *2, and "[u]nder Plaintiff's version of events, he was lying on the ground and not resisting arrest or attempting to flee when the officers kicked and stomped him, permitted a police dog to attack him several times, and kicked him again after he was handcuffed," *id.* at *8.

1

In assessing the objective reasonableness of the use of canine force, courts routinely consider the duration of a dog bite. *See, e.g., Trammell v. Thomason*, 335 Fed. Appx. 835, 844 (11th Cir. 2009) (reversing summary judgment in favor of officer on § 1983 claim where there was evidence that dog attack lasted "for a significant period of time," and jury might find "that the officers failed to stop the attack promptly after they became aware that [plaintiff] was not the suspect."); *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 (11th Cir. 2000) (overturning qualified immunity for officer whose dog's attack on the restrained plaintiff "may have lasted as long as two minutes "); *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998) (holding that "excessive duration of the bite . . . could constitute excessive force"); *Campbell v. City of Springboro, Ohio*, 788 F.Supp.2d 637, 671 (S.D. Ohio 2011) (noting that "[t]he final factor suggesting the force applied against Campbell was excessive is the duration of the attack," and holding that, because "[t]here is evidence suggesting that [officer] allowed [dog] to continue to bite [suspect] for an extended period of time, up to forty-five seconds . . . [and suspect] maintains that he did not kick [dog]" or refuse to comply with officer's orders, officer was not entitled to summary judgment on plaintiff's excessive force claim), *aff'd*, 700 F.3d 779, 787 (6th Cir. 2012); *Dunn v. Nance*, 2009 WL 1956429, at *7 (D. Idaho July 6, 2009) ("Ordering or allowing a police canine to bite a suspect for more than one minute under the circumstances described above [i.e., the plaintiff was lying flat on the ground, not resisting, and with his arms outstretched in full view of the officers] could amount to excessive force."). Officers are

-22-

generally expected to remove a dog once it becomes clear that the suspect no longer poses an immediate threat of harm and is not actively resisting or evading arrest. *See, e.g., Edwards v. Shanley*, 666 F.3d 1289, 1296 (11th Cir. 2012) ("[T]he *Graham* factors compel the conclusion that [the officer] used unreasonable force when he subjected [the suspect] to five to seven minutes of dog attack, while [the suspect] was pleading to surrender and [the officer] was in a position to immediately effect [the suspect's] arrest."); *Carter v. Marion*, 2013 WL 5220180, at *10 (M.D. Ga. Sept. 16, 2013) (holding that officers were not entitled to qualified immunity where dog was permitted to continue attacking plaintiff even after he "was compliant with the . . . officers, lying face down, arms above his head, and posing no threat of bodily harm to the officers or others [and] was not attempting to flee and was asking the officers for help and to call off the canine."); *Calton*, 2004 WL 2965005, at *3 (holding that "officer's release of a police dog on a suspect of a misdemeanor traffic offense who is making no threatening actions and is not actively resisting at the time of the release was objectively unreasonable."). In other words, "even where deploying a dog to bite and hold a suspect is reasonable, an officer may use excessive force by allowing the dog to continue biting and holding a suspect who has ceased to pose a threat to fight or flee." *Becker v. City of Evansville*, 2015 WL 328895, at *11 (S.D. Ind. Jan. 26, 2015).

Although Escobar's complaint is somewhat imprecise in detailing the chronology of events,[14] Escobar alleges that before Bullet bit into his leg, he "dropped a pocket knife that

---

[14]*See supra* note 10.

was in his possession onto the ground, and lay flat on the ground 'like a parachute man,'"

Compl. ¶ 16; that, at some point, Officer Montee saw him laying on the ground; that Officer

Montee saw him drop his knife;[15] that Bullet bit into Escobar's calf and held him for 30

seconds; that Bullet bit into Escobar's leg a second time and held him for another 30 seconds;

and that during the attack, Escobar "continuously yelled for the dog to be taken off of him,"

*id.* ¶ 23.   In his response brief, Escobar argues that, "[g]iven the severity of [his] injuries,

[Officer] Montee's belated efforts to call off his dog precludes summary judgment.  He had

more than a realistic opportunity to stop the series of bite[s] when he knew that Plaintiff was

laying on the ground, and yelling in pain."  P. Br. 18.[16]

Considering the *Graham* factors, the court concludes that, viewed favorably to

Escobar and accepted as true, the well-pleaded allegations in the complaint show that Officer

Montee used excessive force by allowing Bullet to continue biting and holding Escobar after

it became apparent to Officer Montee that Escobar was no longer armed and was not resisting

arrest.   Escobar has sufficiently alleged that, either before or just after Bullet bit him, he

threw his knife to the ground, was lying flat on the ground "like a parachute man," Compl.

¶ 16, and was "not resisting" arrest, *id.* ¶ 93.  These facts, if true, show that, at some point

during the attack by Bullet, Escobar no longer posed an immediate threat to the safety of the

---

[15]Escobar alleges that "[u]pon hearing the police dog," he dropped his pocket knife on the ground, Compl. ¶ 16.  Officer Montee contends, however, that Escobar still had the knife in his hand when Bullet bit into his leg.

[16]Although Escobar refers to "summary judgment," Officer Montee has only moved for a dismissal under Rule 12(b)(6), not for summary judgment.

officers and others.  These same facts show that although Escobar had initially fled from the officers who came to his residence, he was no longer "actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.  The court concludes that allowing Bullet to hold Escobar by biting his calf for up to 60 seconds was excessive under the circumstances.

2

Having concluded that Escobar has alleged that Officer Montee used excessive force by not removing Bullet from Escobar's leg when it became apparent to Officer Montee that Escobar was not resisting arrest, the court next considers whether it was clearly established at the time of the incident that, under the circumstances alleged, Officer Montee's 60-second delay in removing Bullet from Escobar's leg violated the Fourth Amendment.

Several courts have held that the law is clearly established that an officer uses excessive force by allowing a police dog to continue biting a suspect who has surrendered and no longer presents a threat to flee or resist arrest.  *See, e.g., Priester*, 208 F.3d at 927 (holding that where plaintiff "did not pose a threat of bodily harm to the officers or to anyone else" and "was not attempting to flee or to resist arrest," no reasonable officer could believe that allowing a police dog to bite the plaintiff for two minutes was reasonable force); *Watkins*, 145 F.3d at 1090-93 (holding "it was clearly established that excessive duration of the [dog's] bite and improper encouragement of a continuation of the [dog] attack by officers could constitute excessive force," and affirming denial of qualified immunity where officer did not order the dog off until the plaintiff complied with an order to show his hands);

-25-

*Becker*, 2015 WL 328895, at *26 ("the law has clearly established that an officer uses excessive force by allowing a police dog to continue biting a suspect who has surrendered and no longer presents a threat to flee or resist arrest."); *Dunn*, 2009 WL 1956429, at *8 ("Although it may be proper police procedure to use a canine to apprehend a suspect, the Court is not convinced that a reasonable officer would consider it proper procedure to order or allow a canine to bite and hold an unresisting suspect for more than one minute while other officers stood by and laughed"); *Williams v. Hainje*, 2008 WL 4298499, at *8 (N.D. Ind. Jan. 17, 2008) ("there can be no question that the use of a police dog on an individual who was offering no resistance would violate the Fourth Amendment.  There also can be no question that this is a 'clearly established' right."); *Fidler v. City of Indianapolis*, 428 F.Supp.2d 857, 865 (S.D. Ind. 2006) (holding that "no reasonable officer could have believed that the Constitution would permit an officer to . . . purposefully order" a dog to attack a suspect "after he ceased fleeing and lay on the ground," offered his hands to be cuffed, and said, "I give up.").  And although there is scant Fifth Circuit authority addressing excessive force claims based on the use of police dogs, it is clearly established in this circuit that it is objectively unreasonable to use similar types of force against a suspect who is not resisting arrest.  *See, e.g., Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) ("The law was clearly established at the time of the deputies' conduct that, once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's subsequent use of force is excessive."); *Newman v. Guedry*, 703 F.3d 757, 762-63 (5th Cir. 2012) (denying qualified immunity where officers immediately resorted to using nightstick and taser where suspect

did not pose threat to officers' safety and did not resist officers or attempt to flee); *Anderson v. McCaleb*, 480 Fed. Appx. 768, 773 (5th Cir. 2012) (per curiam) (holding that officer "should have known that he could not continue to shock [plaintiff] with the taser after he was no longer resisting arrest.").[17]

Accepting the well-pleaded facts as true and viewing them favorably to Escobar, the complaint alleges that Officer Montee permitted Bullet to bite and hold Escobar for at least 60 seconds, even though Escobar was lying on the ground with his hands extended "like a parachute man," was not actively resisting arrest, was calling out for the dog to be removed, and, at some point during the 60 seconds, dropped his knife. In sum, according to Escobar's complaint, at the time Bullet attacked him, he was neither resisting nor fleeing, and any rational cause to fear resistance or flight had dissipated. Any reasonable officer would have understood that the Fourth Amendment prohibits continued force, particularly such extreme force as allowing a dog to bite Escobar's leg for over one minute, causing injuries of the severity alleged: "several large, deep wounds to large 4 inch square chunk gone and smaller beneath it" and wounds "so large that his bones, facia, and muscles were visible." Compl. ¶ 53. *See Becker*, 2015 WL 328895, at *27.

Accordingly, the court concludes that Officer Montee is not entitled to dismissal of Escobar's § 1983 claim that Officer Montee used excessive force, in violation of the Fourth

---

[17]The Fifth Circuit has clearly held that "[l]awfulness of force . . . does not depend on the precise instrument used to apply it," and that "[q]ualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel." *Newman*, 703 F.3d at 763.

Amendment, by failing to remove Bullet from Escobar's leg when it became apparent to Officer Montee that Escobar was not resisting arrest or attempting to flee.[18]

### III

Officer Montee also moves to dismiss Escobar's § 1983 claim under Rule 12(b)(6), contending that the allegations in the complaint regarding Officer Montee are insufficient to state a claim on which can be granted.  To the extent the court is granting Officer Montee's motion to dsimiss based on the doctrine of qualified immunity, the court denies as moot Officer Montee's Rule 12(b)(6) motion based on failure to state a claim.  To the extent Escobar's § 1983 claim survives Officer Montee's motion based on qualified immunity—i.e., to the extent Escobar bases his § 1983 claim on Officer Montee's failure to remove Bullet from Escobar's leg after it became apparent that Escobar was no longer resisting arrest or attempting to flee—the court has already concluded that Escobar has sufficiently pleaded a constitutional violation.  *See supra* at § II(F)(1).  Accordingly, the court denies Officer Montee's motion to dismiss Escobar's § 1983 claim for failure to state a claim.

### IV

Officer Montee moves in the alternative to require that Escobar file a Rule 7(a) reply. Although the court could easily conclude that the allegations against defendants John Does 1-10 lack sufficient detail for the court to evaluate these officers' entitlement to qualified

---

[18]The court is denying Officer Montee's motion based on the well-pleaded facts alleged in the complaint, accepted as true and viewed favorably to Escobar.  Nothing in the court's opinion should be read to suggest that Officer Montee will be unable to prevail on the defense of qualified defense at the summary judgment stage or at trial.

immunity, the court concludes that the complaint is sufficiently detailed to enable it to address whether Officer Montee is entitled to qualified immunity.  As to Escobar's § 1983 claim based on Officer Montee's decision to release Bullet without first giving Escobar a verbal warning, the court is granting Officer Montee's motion to dismiss based on qualified immunity; as to Escobar's remaining § 1983 claim, Escobar has sufficiently pleaded the facts relevant to Officer Montee's qualified immunity defense, and, accordingly, a Rule 7(a) reply is neither necessary nor required.

*   *   *

For the foregoing reasons, the court grants in part and denies in part Officer Montee's motion to dismiss based on the defense of qualified immunity, denies in part as moot, and in part on the merits, Officer Montee's motion to dismiss for failure to state a claim, and denies Officer Montee's alternative motion to require Escobar to file a Rule 7(a) reply.

**SO ORDERED**.

February 2, 2016.


_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE