IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ISRAEL ESCOBAR, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:15-CV-1962-D |
| VS. § | |
| § | |
| LANCE MONTEE, et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

This is an action by plaintiff Israel Escobar ("Escobar") against defendant Lance Montee ("Officer Montee"), a Grand Prairie Police Department canine officer, seeking to recover under 42 U.S.C. § 1983 on a Fourth Amendment excessive force claim and on other claims. Officer Montee moves for summary judgment based on qualified immunity. Because the summary judgment record reflects that there is a genuine issue of material fact, the court denies Officer Montee's motion as to Escobar's Fourth Amendment excessive force claim. The court otherwise dismisses Escobar's claims against Officer Montee.

I

Because this case is the subject of a prior memorandum opinion and order, *see Escobar v. Montee*, 2016 WL 397087 (N.D. Tex. Feb. 2, 2016) (Fitzwater, J.) ("*Escobar I*"), the court will recount only the background facts and procedural history necessary to understand the present decision.

On or about February 22, 2014, shortly after 9:00 p.m., Escobar had an argument and

physical altercation[1] with his wife in a restaurant parking lot.[2] After the altercation ended, Escobar drove his wife to a Walmart parking lot, where she exited the vehicle, and he then returned to his residence located in Grand Prairie, Texas. After spending a few minutes at his residence, Escobar decided to return to the Walmart to pick up his wife. As he was about to depart, he observed a police vehicle at his residence.

Escobar decided to exit his residence through the back door because he feared the consequences of a run-in with the police. He took refuge near the back porch of a house a few blocks away. While he was hiding, a helicopter dispatched from the Texas Department of Public Safety ("DPS"), Garland Office, arrived at the scene and notified the officers on the ground that someone was in the backyard two houses to the west of the officers' location. According to the Incident History Detail transcribed from statements over the police radio, it was determined that Escobar was lying on the ground "in [a] fetal position." D. App. 6.

After Escobar's location was determined, Officer Montee and the other officers at the scene formulated a plan. They had been informed that Escobar was armed with a knife, and that his mother had told the police that Escobar told her that the police would have to kill him to catch him. After several unsuccessful attempts to contact the owner of the residence

---

[1]Escobar alleges that his wife told the police that he struck her with his hand, which he contends is a class "A" misdemeanor assault offense under the Texas Penal Code.

[2]In deciding Officer Montee's summary judgment motion, the court views the evidence in the light most favorable to Escobar as the summary judgment nonmovant and draws all reasonable inferences in Escobar's favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

where Escobar was hiding, Officer Montee threw his canine, a German Shepherd named "Bullet," over the fence. According to Escobar, when he heard a police officer with a dog rounding the corner of the house, he dropped the knife in his possession and lay flat on the ground with his face down, because he feared what the dog might do to him.

Police then entered the yard where Escobar was hiding and ordered him to get down on the ground. Without warning, Bullet attacked Escobar, biting him in the middle upper calf area of his leg while Bullet shook his head violently. After approximately 30 seconds had elapsed, Bullet let go of the middle upper calf area of Escobar's leg and took a second bite, this time of Escobar's outside upper calf area.[3] During both dog bites, Escobar continually yelled for the dog to be taken off of him. After approximately 30 more seconds of the second dog bite, one of the police officers yelled a command to Bullet, causing the dog to stop biting immediately.

Escobar brought this suit under 42 U.S.C. § 1983 against Officer Montee and "John Does 1-10,"[4] alleging that Officer Montee violated these constitutional rights: to be free from unreasonable seizure; to be free from the use of unreasonable, unnecessary, and excessive

---

[3]Officer Montee contends that he gave only one command to Bullet to seize Escobar, and that, although Bullet may have lost his grip and therefore bit and held Escobar a second time during the struggle, he only saw Bullet bite and hold Escobar once. Officer Montee also posits that the entire struggle between the time Bullet first made contact with Escobar to the time that officers gained control of the struggling Escobar and took him into custody was about 30 seconds.

[4]Escobar sues John Does 1-10 on claims of indifference and failure to intervene to stop dog attack, denial of medical treatment, and intrusion on seclusion.

force; and to have medical care for injuries received while in custody.[5] Officer Montee moved to dismiss Escobar's Fourth Amendment claims asserted against him on the basis of qualified immunity. In *Escobar I* the court granted Officer Montee's motion in part, dismissing Escobar's claim that Officer Montee used excessive and unreasonable force, in violation of the Fourth Amendment, when he initially released Bullet over the fence to bite and hold Escobar, and when he failed to provide a warning before releasing Bullet. *Escobar I*, 2016 WL 397087, at *5-7. The court denied Officer Montee's motion to dismiss Escobar's § 1983 claim, however, to the extent that Escobar alleged that Officer Montee delayed in removing Bullet after it was clear that Escobar had surrendered his weapon and was not resisting arrest:

> Accepting the well-pleaded facts as true and viewing them favorably to Escobar, the complaint alleges that Officer Montee permitted Bullet to bite and hold Escobar for at least 60 seconds, even though Escobar was lying on the ground with his hands extended "like a parachute man," was not actively resisting arrest, was calling out for the dog to be removed, and, at some point during the 60 seconds, dropped his knife. In sum, according to Escobar's complaint, at the time Bullet attacked him, he was neither resisting nor fleeing, and any rational cause to fear resistance or flight had dissipated. Any reasonable officer would have understood that the Fourth Amendment prohibits continued force, particularly such extreme force as allowing a dog to bite Escobar's leg for over one minute, causing injuries of the severity alleged[.]

---

[5]In *Escobar I* Officer Montee did not move to dismiss or seek a Rule 7(a) reply regarding Escobar's § 1983 claim based on Officer Montee's alleged violation of his constitutional right to medical care for injuries received while in custody. *See Escobar I*, 2016 WL 397087, at *3 n.6.

*Id.* at *10.

Officer Montee now moves for summary judgment on the remaining claims asserted against him based on qualified immunity. Escobar opposes the motion.

II

When a summary judgment movant will not have the burden of proof on a claim at trial, he can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once he does so, the nonmovant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

When qualified immunity has been raised, "[t]he moving party is not required to meet [his] summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (citation omitted). Rather, the movant need only plead his good-faith entitlement to qualified immunity, whereupon "the burden shifts to the plaintiff to rebut it." *Id*. (citation and emphasis omitted); *see also Gates v. Tex. Dep't of Protective*

*& Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that when government official pleads qualified immunity, plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct"). Once qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

III

Qualified immunity jurisprudence is well settled. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (some internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

"To decide whether defendant[] [is] entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiff[] as the

- 6 -

part[y] asserting the injuries, the facts [he has] alleged show that defendant['s] conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.")).[6] "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* Finally, "[e]ven if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) (citing *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (en banc)). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable

---

[6]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation. *Id.* The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 242.

unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)).

IV

The court begins with Officer Montee's motion for summary judgment on Escobar's Fourth Amendment excessive force claim.

A

"The Fourth Amendment's protection against unreasonable seizures of the person has been applied in causes of action under 42 U.S.C. § 1983 to impose liability on police officers who use excessive force against citizens." *Colston v. Barnhart*, 130 F.3d 96, 102 (5th Cir. 1997). "'To prevail on an excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)) (some internal quotation marks omitted).

There is no dispute that Escobar suffered an injury. "The relevant question in this case is whether the force was 'clearly excessive' or 'clearly unreasonable.'" *Id.* In assessing the reasonableness of the use of force, the court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he

is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quoting *Graham*, 490 U.S. at 396) (some internal quotation marks omitted).  This is an objective standard: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

B

To the extent Escobar bases his Fourth Amendment claim on Bullet's biting him a second time or Bullet's biting and holding him at a point after Officer Montee allegedly knew that Escobar ceased to pose a threat to fight or flee, Officer Montee contends that his use of force was not unreasonable.  He maintains that, although he now knows that Bullet bit Escobar twice, he only issued one order to Bullet to bite and hold Escobar; he only saw Bullet bite and hold Escobar one time; when Bullet is using a bite and hold method, he will attempt to seize the subject and hold on until he is directed to release the hold, and if he loses his grip on the suspect for any reason before he is directed to release his hold, he will bite or attempt to bite again; that Bullet might lose his grip if the subject struggles or pulls away, if

- 9 -

the subject's leg is slippery with sweat, or if the type of clothing the subject is wearing could cause him to lose his grip; that because Escobar was armed with a knife and reportedly was willing to go to such extreme lengths as to make police officers kill him rather than arrest him, there was a known particular need to control Escobar and take care to make sure that he was unarmed before the officers took any other steps; and that Officer Montee therefore did not direct Bullet to release Escobar until other officers at the scene had Escobar handcuffed and under their control. Officer Montee also posits that if Escobar was bitten a second time, or if Bullet held Escobar for a period of time Escobar believes was constitutionally unreasonable, there is no one to blame but Escobar himself. Officer Montee argues in his brief:

> Escobar was a large man (6'1" & at least 200 pounds), who feloniously beat his wife, desperately trespassed across numerous yards even reportedly climbing onto a roof trying to escape from Police. He was armed with a knife, and the knife remained in the immediate vicinity even after Escobar dropped it. Escobar struggled with Officers even after K-9 Bullet had seized him, and as the Court can see, the struggle with Officers was going on for about 30 seconds captured on the helicopter video. There simply was no excessive force by Officer Montee concerning his decision to use K-9 Bullet to seize Escobar using a bite and hold technique without an advance warning, and concerning using K-9 Bullet to bite and hold Escobar until Escobar was under control of the four Officers who struggled with him. Even if a second bite was given to Escobar by K-9 Bullet, the entirety of the bite and hold, which included two bites, was not unreasonable under governing Fourth Amendment standards.

D. Br. 15-16.

Escobar responds by pointing to video evidence from the DPS helicopter that he

contends "clearly establishes" that Officer Montee had ample time to use his standard training, and that he ignored clearly established precedents on the proper use of force for police canines. Escobar contends that, as depicted in the video, Officer Montee released Bullet at timestamp 22:29:44 while Escobar was lying motionless on the porch; that the video further establishes that Escobar had been lying on the ground not moving for at least 13 minutes; that, at timestamp 22:30:03, the video shows that Bullet was still attacking; and that, at timestamp 22:30:17, the DPS helicopter video shows that Bullet was biting Escobar's leg despite the fact that he had already surrendered. Escobar maintains that he surrendered before Bullet bit him, and that this raises a fact issue as to whether the prolonged use of Bullet was justified; he was motionless in the fetal position for at least 13 minutes; he was not going anywhere and was not actively resisting arrest; he had dropped his knife and was not actively resisting once Bullet initially bit him; he was lying face down on the ground—not in the fetal position—when Bullet initially bit him, which demonstrates that he had clearly submitted and surrendered; and the DPS helicopter video does not show any active resistance before Bullet bit him, and does not show any additional resistance after Bullet attacked. Finally, Escobar points out that although the underlying offense was an assault, it did not involve a deadly weapon or serious bodily harm, and although there was flight, there was never any evidence of physical resistance against any officer.[7]

---

[7]Escobar also argues that Officer Montee's releasing Bullet without giving a warning was constitutionally unreasonable, and that "based on the totality of the circumstances, the use of a bite and hold on [Escobar] was patently unreasonable and excessive." P. Br. 11. In *Escobar I*, however, the court dismissed Escobar's § 1983 claim based on Officer Montee's

Officer Montee replies, *inter alia*, that Escobar was holding his knife when Officer Montee first saw him, but that even if Escobar had dropped the knife when he first saw Bullet, it is undisputed that the knife remained close enough to Escobar that he could have reached it and could possibly have used it to harm Officer Montee, another police officer, or Bullet, and that Officer Montee thought it was reasonable to have Bullet seize and hold Escobar until the knife was secure or until Escobar was securely in custody.  Officer Montee also contends that, although Escobar estimates the passage of time as totaling about one minute, the time sequence lasted approximately 30 to 35 seconds in total; that Officer Montee's time estimate is confirmed by the DPS helicopter video, which shows Bullet first reaching Escobar's location at timestamp 22:29:45 and shows the entire struggle lasting from timestamp 22:30:04 to timestamp 22:30:35; that the video shows Escobar struggling and moving, even with multiple officers on the patio trying to grab him to carry out his arrest; that there was a need not only to seize Escobar and handcuff him, but also to locate and secure Escobar's knife; and that, under the totality of circumstances that Officer Montee knew of and faced, it was reasonable for Officer Montee to use Bullet to seize Escobar by biting and holding him until he was under control, handcuffed, and his knife was secure.

---

decision to initially release Bullet over the fence to bite and hold Escobar without first issuing a warning. *Escobar I*, 2016 WL 397087, at *5, 7.  Accordingly, in deciding Officer Montee's motion for summary judgment, the court considers only whether there is a genuine issue of material fact concerning Escobar's remaining constitutional claim asserted against Officer Montee—i.e., Escobar's claim that Officer Montee used excessive force when he delayed in removing Bullet even after it was clear that Escobar had surrendered his weapon and was not resisting arrest.

C

The court concludes that although a reasonable jury could accept Officer Montee's version of the facts and find in his favor at trial, a genuine issue of material fact precludes summary judgment on the question whether Officer Montee's use of force was constitutionally excessive. The court reaches this conclusion for largely the same reasons that it denied Officer Montee's motion to dismiss Escobar's claim that Officer Montee used excessive force when he delayed removing Bullet even after it was clear that Escobar had surrendered his weapon and was not resisting arrest. In *Escobar I* the court explained:

> In assessing the objective reasonableness of the use of canine force, courts routinely consider the duration of a dog bite. *See, e.g., Trammell v. Thomason*, 335 Fed. Appx. 835, 844 (11th Cir. 2009) (reversing summary judgment in favor of officer on § 1983 claim where there was evidence that dog attack lasted "for a significant period of time," and jury might find "that the officers failed to stop the attack promptly after they became aware that [plaintiff] was not the suspect."); *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 (11th Cir. 2000) (overturning qualified immunity for officer whose dog's attack on the restrained plaintiff "may have lasted as long as two minutes "); *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998) (holding that "excessive duration of the bite . . . could constitute excessive force"); *Campbell v. City of Springboro, Ohio*, 788 F.Supp.2d 637, 671 (S.D. Ohio 2011) (noting that "[t]he final factor suggesting the force applied against Campbell was excessive is the duration of the attack," and holding that, because "[t]here is evidence suggesting that [officer] allowed [dog] to continue to bite [suspect] for an extended period of time, up to forty-five seconds . . . [and suspect] maintains that he did not kick [dog]" or refuse to comply with officer's orders, officer was not entitled to summary judgment on plaintiff's excessive force claim), *aff'd*, 700 F.3d 779, 787 (6th Cir. 2012); *Dunn v. Nance*, 2009 WL 1956429, at *7 (D. Idaho July 6, 2009) ("Ordering or allowing a police canine to bite a suspect

>
> for more than one minute under the circumstances described above [i.e., the plaintiff was lying flat on the ground, not resisting, and with his arms outstretched in full view of the officers] could amount to excessive force."). Officers are generally expected to remove a dog once it becomes clear that the suspect no longer poses an immediate threat of harm and is not actively resisting or evading arrest. *See, e.g., Edwards v. Shanley*, 666 F.3d 1289, 1296 (11th Cir. 2012) ("[T]he Graham factors compel the conclusion that [the officer] used unreasonable force when he subjected [the suspect] to five to seven minutes of dog attack, while [the suspect] was pleading to surrender and [the officer] was in a position to immediately effect [the suspect's] arrest."); *Carter v. Marion*, 2013 WL 5220180, at *10 (M.D. Ga. Sept. 16, 2013) (holding that officers were not entitled to qualified immunity where dog was permitted to continue attacking plaintiff even after he "was compliant with the . . . officers, lying face down, arms above his head, and posing no threat of bodily harm to the officers or others [and] was not attempting to flee and was asking the officers for help and to call off the canine."); *Calton* [*v. City of Garland*], 2004 WL 2965005, at *3 [(N.D. Tex. Dec. 10, 2004) (Godbey, J.)] (holding that "officer's release of a police dog on a suspect of a misdemeanor traffic offense who is making no threatening actions and is not actively resisting at the time of the release was objectively unreasonable."). In other words, "even where deploying a dog to bite and hold a suspect is reasonable, an officer may use excessive force by allowing the dog to continue biting and holding a suspect who has ceased to pose a threat to fight or flee." *Becker v. City of Evansville*, 2015 WL 328895, at *11 (S.D. Ind. Jan. 26, 2015).

*Escobar I*, 2016 WL 397087, at *8 (most alterations in original).

Viewing the evidence in a light most favorable to Escobar as the summary judgment nonmovant, and drawing all reasonable inferences in Escobar's favor, a reasonable jury could find that Officer Montee used excessive force by allowing Bullet to continue biting and holding Escobar after it became apparent to Officer Montee that Escobar was no longer

armed and was not resisting arrest. For example,[8] Escobar has adduced evidence that when he first heard Bullet rounding the corner of the house, he dropped the knife that was in his pocket, turned over onto his stomach to indicate that he was giving up and did not want to resist, and he did not resist arrest.[9] This evidence would enable a reasonable jury to find that, just before Bullet attacked, Escobar no longer posed an immediate threat to the safety of the officers and others, and that "although Escobar had initially fled from the officers who came to his residence, he was no longer 'actively resisting arrest or attempting to evade arrest by flight.'" *Escobar I*, 2016 WL 397087, at *9 (quoting *Graham*, 490 U.S. at 396).

D

In *Escobar I* the court concluded at the Rule 12(b)(6) stage that it was clearly established at the time of the incident that, under the circumstances alleged, Officer Montee's delay in removing Bullet from Escobar's leg violated the Fourth Amendment. *See id.* at *9-10. Now at the summary judgment stage, viewing the evidence in a light most favorable to Escobar as the summary judgment nonmovant, and drawing all reasonable inferences in Escobar's favor, the court holds that a reasonable jury could find that Officer Montee permitted Bullet to bite and hold Escobar for more than 30 seconds (possibly as long as 60

---

[8]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

[9]Video evidence from the DPS helicopter is not inconsistent with Escobar's version of what happened.

seconds) even though Escobar had dropped his knife before Bullet attacked him, was lying face down on the ground, was not actively resisting arrest, and was "begging the cops to take the dog off [him]." P. App. 3. The evidence would further permit the reasonable finding that "[a] massive piece of muscle, fat and skin was completely ripped from [Escobar's] left le[g] [and] detached from the bone," and that officers on the scene "laughed while [Escobar] was lying on the ground in extreme pain." *Id.* Based on the summary judgment evidence, a reasonable jury could find that, "at the time Bullet attacked [Escobar], he was neither resisting nor fleeing, and any rational cause to fear resistance or flight had dissipated." *Escobar I*, 2016 WL 397087, at *10. As the court held in *Escobar I*, "[a]ny reasonable officer would have understood that the Fourth Amendment prohibits continued force, particularly such extreme force as allowing a dog to bite Escobar's leg for [up to] one minute, causing injuries of the severity alleged." *Id.* (citing *Becker*, 2015 WL 328895, at *27).

Accordingly, although Officer Montee has offered a version of the incident that, if credited by the jury, *would* entitle him to qualified immunity, because Escobar has presented evidence that creates a genuine issue of material fact on this question, the court denies Officer Montee's motion for summary judgment on Escobar's Fourth Amendment excessive force claim based on qualified immunity.

V

Officer Montee moves for summary judgment on Escobar's claim for denial of medical treatment (including any alleged delay in medical care or deprivation of medical care at the scene).

A

Under the Fourteenth Amendment, an arrestee "has a 'constitutional right to be secure in his basic human needs, such as medical care and safety.'"[10] *Dyer v. City of Mesquite, Tex.*, 2017 WL 118811, at *8 (N.D. Tex. Jan. 12, 2017) (Boyle, J.) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 647-48 (5th Cir. 1996)). A state official violates that right when he "act[s] or fail[s] to act with deliberate indifference to the [arrestee]'s needs." *Id*. at 648. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009) (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

A plaintiff alleging deliberate indifference must show that: (1) "each defendant had subjective knowledge of 'facts from which an inference of substantial risk of serious harm could be drawn'"; (2) "each defendant actually drew that inference"; and (3) "each defendant's response to the risk indicates that [he] 'subjectively intended that harm occur.'" *Id*. (quoting *Thompson*, 245 F.3d at 458-59). It is not enough that the official was negligent—only a "subjective intent to cause harm" supports a finding of deliberate indifference. *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003).

B

Officer Montee contends that there is no evidence that there was a deprivation or even

---

[10]The mere delay of medical care can also constitute a constitutional violation, but only if the official causing such delay acts with deliberate indifference that results in substantial harm. *See Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

a delay in furnishing medical treatment at the scene: once Escobar was handcuffed and had stopped struggling, officers examined him and quickly decided to apply a tourniquet to his left leg because of the amount of bleeding; officers then searched the scene to determine that it was secure, and, approximately one minute after the officers had Escobar in custody, a request for an ambulance was made; the ambulance arrived on the scene within just a few minutes; and Officer Montee had no involvement with Escobar once Escobar left the scene in an ambulance. Officer Montee maintains that, in any event, Escobar cannot show that Officer Montee's actions in relation to Escobar's medical care were so egregious that no reasonable officer could have believed the conduct was constitutional.

Escobar has not responded to Officer Montee's arguments. Although Escobar's failure to respond does not permit the court to enter a "default" summary judgment on this claim, *see, e.g., Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who does not respond to the motion is relegated to [its] unsworn pleadings, which do not constitute summary judgment evidence," *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Moreover,

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Rule 56(e)(2), (3).

The court concludes that, to the extent Escobar alleges that Officer Montee deprived him of the right to medical care for injuries received while in custody by delaying the call for medical treatment at the scene, Officer Montee is entitled to summary judgment dismissing this claim. This is so because Escobar has failed to adduce any evidence that would permit a reasonable jury to find that Officer Montee denied Escobar medical treatment or delayed in providing him medical treatment, or that Officer Montee acted with deliberate indifference to Escobar's needs.

VI

Officer Montee also moves for summary judgment on Escobar's claim for "intrusion upon seclusion," which is based on allegations that, while he was lying incapacitated in his hospital bed, "one or more of the unidentified John Doe Defendants [took] photographs of [Escobar] on his camera phone . . . exclusively for the sadistic amusement of that officer and others." Compl. ¶ 103. Officer Montee contends, *inter alia*, that this entire claim is based on actions by unidentified John Doe defendants once Escobar reached the hospital; Officer Montee swears that he had no involvement at any point after Escobar received on-the-scene treatment and was transported to the hospital.

Escobar has not responded to Officer Montee's arguments. To the extent that Escobar intends to bring his intrusion on seclusion claim against Officer Montee—and there is no indication in the complaint that he does—the court grants Officer Montee's motion and dismisses this claim.

\*   \*   \*

Accordingly, for the reasons explained, the court dismisses Escobar's claims for denial of his right to medical care and for intrusion on seclusion to the extent Escobar asserts these claims against Officer Montee. The court otherwise denies Officer Montee's motion for summary judgment because there is a genuine issue of material fact that precludes the court from holding that he is entitled to qualified immunity.

**SO ORDERED**.

March 30, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE